# EXHIBIT 1

AVA NAEINI
PLAINTIFF IN PRO PER
11420 Santa Monica Boulevard
Suite 252098
Los Angeles, California 90025
TEL: 747-999-5737
avanaeini12@gmail.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/26/2023 5:23 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By R. Perez, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES, CENTRAL DISTRICT
## STANLEY MOSK COURTHOUSE-UNLIMITED
## JURISDICTION

| | |
|---|---|
| AVA NAEINI, an individual, | ) Case No.  23STCV17604 |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR:** |
| vs. | ) |
| | ) **1. DEFAMATION** |
| COGNIZANT TECHNOLOGY | ) **2. DEFAMATION PER SE** |
| SOLUTIONS U.S. CORPORATION, A | ) **3. DEFAMATION PER QUOD** |
| DELAWARE CORPORATION, AND | ) **4. FALSE LIGHT** |
| DOES 1-100, inclusive, | ) |
| | ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |
| | ) |

COMES NOW Plaintiff AVA NAEINI, by and through her attorneys, have filed the following COMPLAINT in the above-captioned action and state to this Honorable Court as follows:

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

1.    Plaintiff, AVA NAEINI ("Plaintiff"), institutes this action for actual damages, statutory damages, attorneys' fees and the costs of this action against Defendants, and DOES 1 to 100, inclusive, ("Defendants"), for multiple causes of action.

2.    Defendant, COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, A DELAWARE CORPORATION, AND DOES 1-100, inclusive,

a foreign corporation formed in Delaware that is authorized to do business in the State of California.

3.    Plaintiff does not know the true names of Defendant DOES 1 through 100, inclusive, and therefore sues them by those fictitious names.  Plaintiff is informed and believes and thereon alleges that each of those defendants was in some manner legally responsible for the events and happenings alleged in this complaint and for Plaintiff's damages. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants was, at all times relevant herein, the agent and representative of the other Defendants and was acting, at least in part, within the course and scope of such a relationship.  Therefore, Defendants, and each of them, including all fictitious Defendants sued herein, are liable to Plaintiffs for the acts of the other Defendants. Plaintiff is informed and believes, and on that basis alleges that at all times mentioned herein, each defendant, whether actually or fictitiously named herein, was the principal, agent (actual or

ostensible) or the employee of each other defendants, and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

4.   The true names and capacities of the Defendants, and DOES 1 through 100, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint, and Plaintiff therefore, sues said Defendants by such fictitious names and will seek leave of Court to amend this Complaint to show their true names or capacities when the same have been ascertained.   Plaintiff is informed, and believes, and thereon alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff, as alleged herein.

5.   In addition to the Defendants named above, Plaintiff sues fictitious Defendants DOES 1 through 100, inclusive, pursuant to Code of Civil Procedure § 474, because their names, capacities, status, or facts showing them to be liable are not presently known.  Plaintiff will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

6.    At all times herein mentioned, Plaintiff is informed and believes, and thereupon alleges that the Defendants, and each of them, are liable to Plaintiff for monies owed, as specifically alleged herein. And at all times herein mentioned, each of the DOE

7.    Defendants was the agent and employee of each of the remaining Defendants, and was at all times herein mentioned, acting within the course and scope of said agency or employment.

## JURISDICTION AND VENUE

8.    All events referred to in the allegations contained herein occurred within the boundaries of the County of Los Angeles, State of California as this is where Plaintiff resides.  Therefore both jurisdiction and venue properly lie with this Court.

## FACTUAL BACKGROUND

9.    Plaintiff incorporates by reference paragraphs 1 through 8 as though fully set forth below.

10.   Plaintiff Ava Naeini was hired on May 31st, 2022 by Cognizant as a senior associate for a technical opportunity with Credit Suisse. The salary as a full time employee was 105k.

11.   Defendant, COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION hereinafter referred to as "Cognizant" is a leading provider of consulting,

information technology, and business process outsourcing services. The firm's mission is helping the world's top companies build stronger businesses.

12.    Plaintiff Ava Naeini accepted the position and  signed the invention agreement disclosing the invention and patent fully in the invention agreement to Cognizant. (See Exhibit 1 – INVENTION AGREEMENT, Dated _May 17th, 2022_____, a true and correct copy is provided herein and incorporated by reference).

13.    Upon the hiring there was very little to zero communication from plaintiff manager at Cognizant Amit Ranjan who was in India. As plaintiff was onboarded with Credit Suisse after a week or two plaintiff immediately started performing very well and becoming productive for her role and building a strong relationship with her other manager on the Credit Suisse. Plaintiff was hired for a crucial and highly specialized data and scalability role that in today's world very few people have skills for, and Plaintiff had those skills and relevant experience as she has always been a top performer with a unique mindset.

**[PLAINTIFF GAVE VOLUNTARILY AT THE COMMENCEMENT OF EMPLOYMENT FULL DISCLOSURE OF HER INVOLVEMENT WITH HER PULSE OPERATIONS COMPANY.  THIS DISCLOSURE WAS MADE IN WRITING AND FREELY PROVIDED TO HER EMPLOYER AND CLIENT CREDIT SUISSE]**

14.    Prior to hiring for this company plaintiff was working on the invention and a tech startup that plaintiff incorporated, and plaintiff disclosed all of that information to

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

plaintiff manager on the Credit Suisse side via email immediately to make sure

transparency and ethics are maintained and he is aware of her prior efforts.

15. Credit Suisse has their own agreements regarding "outside business activities",

OBI that requests you to disclose all of your business activities, so plaintiff

disclosed the company and the project, Pulse Operations and her patent to make

sure the invention is protected and transparency is maintained fully to preserve

her credibility and reputation.

16. Plaintiff also became aware on the Credit Suisse main portal that they have a

founders grant for innovative projects, and plaintiff decided to take a chance on

her project which was focused on scalability, machine learning and artificial

intelligence. They mention the grant is only for full time and not consultants yet

their team became very interested in learning more about plaintiff project and

rerouted plaintiff to "internal AI teams" for further discussions which was super

exciting as plaintiff project needed data, and it was something Credit Suisse could

potentially provide.

17. Within a day or two after disclosing of plaintiff project, she was called into a

meeting by her Credit Suisse manager's manager. The manager(name not known)

started asking about Pulse and plaintiff openly shared the project and mentioned

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

to him that she is a minority woman and any support will be truly appreciated which he stayed silent about in awkward and dishonest manner.

18. A day went by, and plaintiff was asked by Amit Ranjan, the manager on the Cognizant side not to login into any Credit Suisse's account without any further explanations and vague answers upon legitimate questions as it was her work. Plaintiff reached out to him further down the line and still there were no answers.

19. This was in July 2022 about a month into her employment. After about two weeks of pure silence and being in the dark plaintiff received an email from the security department of Cognizant, <u>and plaintiff was asked not to discuss anything even with her manager, then plaintiff was called into a secret meeting where she was asked not to discuss anything with anyone prior to it</u>.

20. Upon the video call the gentleman whose name was Bill, from the company security team asked her with a threatening and condescending tone if she is recording, and plaintiff was shocked by this question and his suspicious attitude and responded that she is not recording. He also brought a witness with him another woman(name not known) and plaintiff had to join alone.

**[PLAINTIFF BECAME SUBJECT TO FALSE ACCUSATIONS BY CLIENT CREDIT SUISSE THAT PLAINTIFF WAS SEEKING TO BECOME A COMPETITOR OF COGNIZANT]**

21. He kept accusing plaintiff that plaintiff had applied for founder's grant because plaintiff wanted to make money from Credit Suisse and now plaintiff is a

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

competitor to Cognizant which was shocking to her given the size and stage of

infancy of plaintiff project. Plaintiff kept saying no and she insisted that her

project needed support as it requires massive amount of metrics data for training

and testing the models. Unfortunately, he kept insisting on the money side and

plaintiff decided not to argue.

**[FALSE ALLEGATIONS THAT PLAINTIFF FAIL TO SHARE IN THE CONFLICT-OF-INTEREST SECTION OF COGNIZANT ETHICS TRAINING HER INVOLVEMENT WITH PULSE OPERATION.  THIS ACCUSATIONS OF SABOTAGING A CURRENT  EMPLOYER  FOR SELF-GAIN RESULTS IN A DEATH BLOW IN THE TECH INDUSTRY AND IF ESTABLISHED IN THE MARKETPLACE WOULD PERMANENTLY BAN OR BAR THE ACCUSED OF ANY FUTURE MEANINGFUL OPPORTUNITIES ]**

22.     He continued with an accusatory tone by saying plaintiff refused to disclose her

project and didn't share that in the conflict-of-interest section of cognizant ethics

training, hence she is unethical. When plaintiff looked at the slide first of all that

slide was mute in a video training that had non stop audio, secondly the slide

clearly stated disclosing information if you have "a notable ownership" in a

company while her company has 0 revenue and assets, so the ownership was not

notable, and it was more of her research project in machine learning where she

was attempting to raise funds for, therefore she had to create a structure and a

company around it by the rules of tech startups and fundraising in tech which he

had no awareness of as he wasn't a technical person or a founder. Rather he

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

attempted to defame the plaintiff and sabotage her reputation by attacking her and accusing her of behavior that she hasn't done.

23.     To clear the air plaintiff requested him to lookup the invention agreement as proof of her honest manners and authenticity with the company and transparency of her research efforts prior to hiring. He requested the lady on the call to assist with that but unfortunately because Cognizant is very incompetent and lacks proper processes, ownership and leadership they were not even able to look up this simple agreement which plaintiff later on asked for and attached to this lawsuit as an exhibit. Not being able to locate the agreement at the time by them was an issue on their end that they were not taking responsibility for and contributed to the defamation and false plotting.

24.     After the meeting ended, silence and being in the dark continued and within a week an HR person named Danielle Curry reached out to plaintiff, treating her like her therapist and going on to talk about herself nonstop and the fact that she is new and clueless, very nervous, and doesn't know what to do and plaintiff handled it professionally yet didn't appreciate that she has to work with someone in a sensitive situation where she demonstrates that she is incapable and new.

25.     Plaintiff listened to her venting, then stated that she personally has been in the dark for more than 3 weeks and this is very unhealthy from the HR perspective

and employee's health, plus no one is explaining to her anything and she is being called to secret meetings where the person brings someone with her and plaintiff is alone which defeats equality and she is not even allowed to speak to her manager about anything. She mentioned that this is unfair, and she does not feel safe at all. The call ended by her saying she tries to do her best.

**[ESSENTIALLY PLAINTIFF WAS TERMINATED FOR NO GROUNDS OR BASIS OTHER THAN INFERENCE OR CONFLICT OF INTEREST FOR FAILURE TO DISCLOSE HER PULSE BUSINESS OPERATION AT THE TIME SHE ACQUIRED EMPLOYMENT WITH COGNIZANT]**

26.    Within a day or two Danielle informed plaintiff and said she is terminated, and plaintiff last day is July 29th. When plaintiff confronted and asked her about what she has shared before she responded in an inhumane tone and said the decision is final so she paid the plaintiff back this way after she wasted her time by venting and being a two-faced individual which is unethical.

**[PLAINTIFF POSITION IS THAT SHE WAS THE VICTIM OF GENDER AND ETHIC RACIAL BIAS BECAUSE SHE IS AN ADVANCED DEGREE INDIVIDUAL WHO IS MUSLIM AND FEMALE.  THIS CREATES A SIGNIFICANT AMOUNT OF FEAR AND INTIMIDATION IN THIS PREDOMINATE MALE TECH INDUSTRY.]**

27.    Plaintiff felt abused and defamed, and being slandered simply because plaintiff is a passionate, entrepreneurial inventor. This company represented people with numbers for login and identification and way before working for them, plaintiff was already a lot more than just a 6-digit number. Plaintiff was terminated on July

29th 2022 with no communication from plaintiff's unresponsive and irresponsible manager Amit Ranjan from Cognizant, who chose to take vacation during this very sensitive time and kept updating his pictures on WhatsApp with bikes as ironically plaintiff shared in her welcome email that biking is her hobby!! Manager on the Credit Suisse side was also silent which was very disappointing given her hard work and absolute best performance. Her growth and her stability were silently sabotaged by someone else's malicious intent who was racially biased towards the plaintiff.

**[DEFENDANT COGNIZANT REPORTED PLAINTIFF TO EDD AS PARTICIPATING IN UNETHICAL BEHAVIOR IN ORDER TO DENY HER UNEMPLOYMENT CLAIM HOWEVER THE ADMINISTRATIVE HEARING OFFICER RULED IN HER FAVOR THAT IN EFFECT SHE WAS NOT TERMINATED FOR A CAUSE THAT WOULD JUSTIFY DENYING HER UNEMPLOYMENT BENEFITS]**

28.    The abuse even continued by Cognizant by reporting plaintiff to EDD for improper conduct and lying of verbal and written warning which made EDD deny her unemployment claim at first and plaintiff chose to appeal for it, and the Judge ruled in her favor as she clearly understood the defamation component and abuse were very unjust.(See Exhibit 2 – for the denial, defamation claim of misconduct, court hearing and judge ruling correct copies are provided by herein by reference)

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

29.     Plaintiff felt extremely discouraged and attacked by Cognizant approach which

was far from their brand of "Cognizant".

**[PLAINTIFF EFFORTS TO FIND COMPARABLE WORK HAVE NOT BEEN
SUCCESSFUL SINCE LEAVING COGNIZANT.  SURELY VINDICATION IN
THIS MATTER WOULD MAKE HER WHOLE DUE SINCE HER CURRENT
MISFORTUNE IS DUE TO RACIAL BIAS, UNFOUNDED GROUNDS AND
GENDER AND RACIAL INTIMIDATION].**

30.     Plaintiff has not been able to seek work since then due to damages and mainly

discouragement ruled by discrimination given that she was in a position with

Credit Suisse that she had huge potential for delivery of a successful massive

project and an invention that can truly change the world. Her project, pulse is

cause driven and needs massive amount of data and infrastructure which is a

something that's not understood by someone who is not technical.

31.     Plaintiff career and  growth got sabotaged by someone who cannot handle the

intelligence of an immigrant muslim woman and that needs to be reviewed.


### FIRST CAUSE OF ACTION
### DEFAMATION

**(AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.)**

32.     Plaintiff incorporates by reference paragraphs 1 through 31 as though fully

set forth below.

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

33.   Plaintiff is informed and based upon such belief alleges that the conduct of the agents, representatives and employees of Defendant company intentionally published statements that would be construed as defamatory against this Plaintiff. That assertions that Plaintiff had lied about her involvement with Pulse Operations, or tried to evade full disclosure of the startup she sought to seek funding for thru a portal for the client Credit Suisse in any event were defamatory as they were published among the agents, representatives and employees of Defendant company intentionally.

34.   That in fact Plaintiff can demonstrate and prove such allegations were false.

35.   That these representations made against her are not privileged and therefore not protected speech.

36.   That to make the accusations against this plaintiff has a natural tendency to injure or cause special damage to her business reputation.

37.    That this defendant's agents, representatives and employees of Defendant company were at fault in publishing these statements and they  amounted to at least negligence

38.   Plaintiff is informed and based upon such belief thereupon alleges that the statement was either defamatory per se or caused special damages to the plaintiff (defamatory per quod)

39.   Plaintiff is informed and based upon such belief thereupon alleges that the statement was published to third parties as she met with numerous individuals who were agents, representatives and employees of Defendant company who caused the statements that were defamatory as aforementioned to be published to third parties.

40.    As a result of the conduct as set forth this plaintiff was defamed.

## SECOND CAUSE OF ACTION
## DEFAMATION PER SE

**(AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.)**

41.   Plaintiff incorporates by reference paragraphs 1 through 40 as though fully set forth below.

42.   In California, statements that "tend to expose the plaintiff to public hatred, contempt, ridicule, aversion, or disgrace, and to induce an evil opinion of him in the minds of right-thinking persons and deprive him of their friendly intercourse or society" may be considered defamation per se.

43.   Plaintiff is informed and based upon such belief alleges that the conduct of the agents, representatives and employees of Defendant company claims that the agents, representatives and employees of Defendant company harmed her by making the following statement(s): (1) She was unethical; (2) She was seeking to

fund her own company with the funds of the Client firm; 3.  That she sought to evade and avoid disclosure by not fully disclosing her involvement with Pulse Operations among other defamatory statement none of which are true.

44.   Plaintiff is informed and based upon such belief alleges that the conduct of the agents, representatives and employees of Defendant company in fact made the aforementioned statements to persons other than Plaintiff and that these people reasonably understood that the statement(s) were] about plaintiff];

45.   That these people, the agents, representatives and employees of Defendant company reasonably understood the statement(s) as aforementioned to mean that these were grounds for this claim as  defamation per se.

46.   That agents, representatives and employees of Defendant company  failed to use reasonable care to determine the truth or falsity of the statement(s).

47.   That the essential damage occurred because Plaintiff loss her employment and in addition has suffered harm to her business and trade reputation as she cannot find comparable employment as a result of the accusations which are defamatory in nature.  Plaintiff has suffered harm to reputation, harm and hurt feelings because of the actions of the Defendant.

48.    Plaintiff is entitled to recover her actual damages upon proof of defendant's

wrongful conduct upon proving that such conduct was the substantial factor in

causing her harm to her business, trade, profession or occupation reputation.

49.    Plaintiff is informed and based upon such belief alleges that the conduct of the

agents, representatives, and employees of Defendant company even if plaintiff

has not proved any actual damages for harm to reputation or shame, mortification,

or hurt feelings, the law assumes that she has suffered this harm. Without

presenting evidence of damage, plaintiff is entitled to receive compensation for

this assumed harm in whatever sum is reasonable including punitive damages.

### THIRD CAUSE OF ACTION
### DEFAMATION PER QUOD

**(AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.)**

50.    Plaintiff incorporates by reference paragraphs 1 through 49 as though fully

set forth below.

51.    Under California law, Defamation per quod occurs when a statement is not

obviously defamatory on its face, but requires proof that the statement is

defamatory and subjects one to liability for special damages.

52.    Plaintiff is informed and based upon such belief alleges that the conduct of the

agents, representatives and employees of Defendant company claims that the

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

agents, representatives and employees of Defendant company harmed her by making the following statement(s): (1) She was unethical; (2) She was seeking to fund her own company with the funds of the Client firm; 3. That she sought to evade and avoid disclosure by not fully disclosing her involvement with Pulse Operations among other defamatory statement none of which are true.   That at all times these persons within the employ of defendant company knew at all times these persons reasonably understood that the  statement(s) were] about plaintiff.

53.   Plaintiff is informed and based upon such belief alleges that the conduct of the agents, representatives and employees of Defendant company in fact made the aforementioned statements to persons other than Plaintiff and that these people reasonably understood that the statement(s) were about plaintiff];

54.   That these people, the agents, representatives and employees of Defendant company reasonably understood the statement(s) as aforementioned because of the facts and circumstances known to the listener(s)/reader(s) of the statement(s), they tended to injure plaintiff in her occupation or to expose her to hatred, contempt, ridicule, or shame.

55.   That defendant company personnel  failed to use reasonable care to determine the truth or falsity of the statement(s);

56.   That plaintiff suffered harm to her business, profession, or occupation including

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

money spent as a result of the statement(s)]; and that the statement(s) were] a substantial factor in causing plaintiff]'s harm.

57.     That agents, representatives and employees of Defendant company actions if proved by plaintiff then she has proved all of the above, then she is entitled to recover damages, and if plaintiff proves that defendant's wrongful conduct was a substantial factor in causing any of the following actual damages due to harm to plaintiff's business, trade, profession, or occupation; defendant must pay  as a result of the

defamatory statements;

58.     That the type of harm to plaintiff's reputation; and imposing shame, mortification, or hurt feelings justifies compensation as well as punitive damages.

**FOURTH CAUSE OF ACTION**
**FALSE LIGHT**

**(AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.)**

59.     Plaintiff incorporates by reference paragraphs 1 through 58 as though fully set forth below.

60.     Plaintiff can sue for false light when something highly offensive is implied to be true about them that is actually false. False light in California is different from

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

defamation. While defamation concerns statements that are actually false, false light is about false implications.

61. Plaintiff claims that defendant violated her right to privacy.

62. That defendant agents, representatives and employees of Defendant company publicly disclosed information or material that showed plaintiff in a false light;

63. That the false light created by the disclosure would be highly offensive to a reasonable person in plaintiff's position;

64. That there is clear and convincing evidence that defendant agents, representatives and employees of Defendant company knew the disclosure would create a false impression about plaintiff or they acted with reckless disregard for the truth.

65. In the alternative that defendant was negligent in determining the truth of the information or whether a false impression would be created by its disclosure;

66. That plaintiff was harmed; and that plaintiff sustained harm to her business, profession, or occupation including money spent as a result of the statement(s)]; and That agents, representatives and employees of Defendant company conduct was a substantial factor in causing plaintiff's harm.

67. That agents, representatives and employees of Defendant company actions if proved by plaintiff then she has proved all of the above, then she is entitled to recover damages, and if plaintiff proves that defendant's wrongful conduct was a

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION AND DOES 1-100, inclusive.

substantial factor in causing any of the following actual damages due to harm to

plaintiff's business, trade, profession, or occupation; defendant must pay as a

result of the

Statements that place her in a false light;

68.   That the type of harm to plaintiff's reputation; and imposing shame, mortification,

or hurt feelings justifies compensation as well as punitive damages.


## PRAYER FOR RELIEF

69.   **WHEREFORE**, plaintiff prays judgment against defendants, and each of them,

as follows:

1.   For general damages in the sum of according to proof.

2.   For punitive damages  according to proof.

3.   For costs of suit herein incurred.

4.   For such other and further relief as the court may deem proper.

**5.**   Plaintiff prays for three years of full Salary amount as well as punitive damages

in the amount of $120.000 for damaging her reputation, career, misinformation and

ruining growth opportunities.

6.   Plaintiff prays for a letter from Defendant indicating that their decision to

terminate employment was done prematurely and that Plaintiff is free to reach out to

Credit Suisse regarding potentially working with them on the project as they were

initially interested.  That opportunity had no conflict with her role at the time and in

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

contrary it was something that could lead and contribute to huge success of Credit

Suisse and other big tech companies using machine learning.

Respectfully submitted,

Dated:   07/26/2023                    By: _____

                                       Ava Naeini, Plaintiff In Pro Per

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

See Exhibit 1 – INVENTION AGREEMENT, Dated _May 17th,

2022_____, a true and correct copy is provided by herein by reference.

As a condition of my employment or my continuing employment with Cognizant Technology Solutions Corporation, a Delaware corporation, or any of its subsidiaries, affiliates, successors or assigns (collectively, "**Cognizant**"), and in consideration of my employment or continuing employment with Cognizant and my receipt of salary and other compensation, training, access to confidential information and relationships with vendors and customers, the benefit of Cognizant's goodwill, and the other valuable consideration I am receiving and will receive in the future, I agree to the following provisions of this Cognizant Confidential Information and Invention Assignment Agreement (this "**Agreement**"):

## 1. MY EMPLOYMENT IS AT-WILL

I understand and acknowledge that my employment with Cognizant is for an unspecified duration and constitutes "at-will" employment. This means that my employment relationship may be terminated at any time for any reason (or no reason) at Cognizant's option or my option, with or without notice. Any representation to the contrary is unauthorized and invalid.

## 2. MY OBLIGATIONS RELATING TO CONFIDENTIAL INFORMATION.

**A. Definition. "Confidential Information"** means all proprietary information and materials, trade-secrets, know-how, and data, whether in written, electronic, oral, or any other form, that have not been made generally available to the public that are: (1) created, maintained or used in any aspect of Cognizant's business operations; (2) suggested by or that result from any task assigned to me or work I perform for Cognizant, whether or not during working hours; (3) obtained from a legal entity that Cognizant acquired or in which it purchased a controlling interest (an "Acquired Company"); or (4) obtained by Cognizant from a third party subject to an obligation of confidence; in each case, whether or not marked "Confidential" or with another proprietary legend and even if I am not otherwise notified that Cognizant considers it to be Confidential Information. Confidential Information does not include any of the foregoing items that have become publicly and widely known through no wrongful act of mine or of others who were under an obligation of confidence as to the item or items involved. I understand that nothing in this Agreement is intended to limit my right to discuss the terms, wages, and working conditions of my employment to the extent such discussions are protected by applicable law.

**B. Examples.** Confidential Information includes, but is not limited to: (1) marketing and business plans, markets, competitive information; (2) internal policies, procedures, reports and communications; (3) financial information, prices, costs, forecasts, budgets, contract terms and other non-public business information; (4) lists of customers, information I obtain about customers from my interactions with them and from working on customer projects, lists of suppliers and subcontractors, contract terms, and the characteristics of Cognizant's relationships with other companies; (5) lists of employees, terms of employment, and compensation and other personnel information; (6) information that by law is subject to protection from disclosure; (7) data and databases, software, source code, developments, processes, formulas, technology, designs, drawings, engineering, trade secrets, know-how, research, non-public information regarding products and services or their performance characteristics, prototypes, inventions, methodologies, algorithms, laboratory notebooks, manuals, and licenses; and (8) hardware and network configurations, diagrams, passwords and security procedures.

**C. My Obligations.** I agree: (1) to hold Confidential Information in strictest confidence and not to use it except for Cognizant's benefit in the course of my employment; (2) not to disclose Confidential Information to any person or legal entity outside of Cognizant except in the proper performance of my job responsibilities; (3) to comply with Cognizant's policies and procedures for marking, handling, copying, using, storing, transmitting and disclosing Confidential Information, and to otherwise be prudent in these activities by taking reasonable steps to avoid any unintended loss, disclosure or use of Confidential Information; (4) for Confidential Information that Cognizant has received from a third party, to comply with Cognizant's confidentiality obligations applicable to the information, which I acknowledge may be more restrictive than the terms of this Agreement; (5) not to use any deceptive, misleading or illegal tactics to obtain access to the proprietary information or trade secrets of any person or legal entity; and (6) that my obligations regarding Confidential Information begin immediately upon my first having access to such Confidential Information (even if my first access occurs prior to the start of my employment with Cognizant) and continues during and after my employment by Cognizant until such time as the Confidential Information becomes public knowledge other than as a result of any breach of this Agreement by me or anyone acting in concert with me or on my behalf.

**D. Confidential Information of Former Employers** I agree that I will not: (1) improperly use, disclose or induce Cognizant to use any proprietary information or trade secrets of any of my former employers or any other person or legal entity to whom I have confidentiality obligations; or (2) bring onto Cognizant premises or transfer to Cognizant's systems any unpublished document, proprietary information or trade secrets belonging to a third party unless disclosure to, and use by, Cognizant have been consented to in writing by such third party.

**E. Whistle-Blower Protection.**

    **(1) Defend Trade Secrets Act Notice.** I acknowledge that I have been provided with the following notice of immunity rights in compliance with the requirements of the Defend Trade Secrets Act of 2016 (the **"DTSA"**). Notwithstanding any provision of this Agreement, under the DTSA: (a) I shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of Confidential Information that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, if it is made solely for the purpose of reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding, provided that such filing is made under seal; and (b) if I file a lawsuit for retaliation by Cognizant for reporting a suspected violation of law I may disclose Confidential Information to my attorney and use Confidential Information in the court proceeding, provided that I file any documents containing Confidential Information under seal, and do not disclose the Confidential Information except pursuant to court order.

    **(2) Reporting Possible Violations.** No provision of this Agreement shall be interpreted to impede me (or anyone else) from reporting, in accordance with the DTSA, possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Equal Employment Opportunity Commission, Congress, or an agency Inspector General, or making other disclosure under the whistleblower provisions of federal law or regulation. I understand that I do not need Cognizant's prior authorization to make any such reports or disclosures and that I am not required to notify Cognizant that such reports will be, or have been made.

## 3. INVENTIONS.

**A. Definitions.**

    **(1) "Invention"** means any invention, development, concept, know-how, improvement, technique, design, trade secret, idea, data,

discovery, mask work, writing, photo, art item, audio or video recording, software item, source code, documentation, or other original work of authorship and the like, and all copies, improvements, enhancements, derivative works and tangible embodiments of the foregoing, whether or not patentable, subject to trademark protection, or registerable under copyright or similar laws.

**(2) "IP Rights"** means the following types of intellectual property rights under the laws of any jurisdiction in the world: (a) rights associated with works of authorship, including but not limited to copyrights, design rights, moral rights and mask work rights; (b) trademarks, service marks, trade name rights and similar rights; (c) trade secret rights; (d) patent and industrial property rights; (e) other proprietary rights in and to Inventions and intellectual property of every kind; and (f) rights in or relating to applications, registrations, renewals, extensions, combinations, divisions, amendments and reissuances of or for any of the foregoing rights.

**B. Cognizant Inventions.** . I understand and agree that each Invention that I create, conceive, write, develop or reduce to practice, or that I cause to be created, conceived, written, developed or reduced to practice (collectively, "**Created**") during the period of my employment with Cognizant, whether I am working alone or with others, is considered a "**Cognizant Invention**" if the Invention meets any one or more of the following conditions: (1) it relates to Cognizant's actual or anticipated business, research or development activities; (2) it is suggested by, or results from, any task assigned to me or work performed by me for or on behalf of Cognizant; (3) it is Created using any Cognizant Confidential Information; or (4) it is Created using any of Cognizant's equipment, resources, materials or time (collectively, "**Cognizant Resources**"). I understand that certain state laws limit the inventions that can be assigned to an employer. Therefore, Cognizant Inventions will not include any invention that cannot be owned by Cognizant under the provisions of such an applicable state law.

**C. Cognizant's Ownership of Cognizant Inventions.** I understand and acknowledge that any Cognizant Inventions consisting of writings, photos, art, audio or video recordings, software, source code, documentation, and other works of authorship created within the scope of my employment with Cognizant or an Acquired Company are owned by Cognizant or the Acquired Company by operation of law as "works made for hire," as that term is defined in the United States Copyright Act. I agree to assign and I hereby do assign exclusively to Cognizant all of my right, title, and interest in and to all Cognizant Inventions and all IP Rights in Cognizant Inventions and I agree that Cognizant is and shall be the sole owner of all Cognizant Inventions and IP Rights therein. I agree that I only have a right to use Confidential Information and Cognizant Inventions while I am employed by Cognizant and for the limited purpose of performing my assigned job responsibilities for Cognizant. Nothing in this Agreement is intended to grant me any other rights or licenses to any Confidential Information or Cognizant Inventions or under any Cognizant IP Rights.

**D. My Obligations Relating to Cognizant Inventions.** I agree to promptly disclose all Cognizant Inventions to the Cognizant IP Team at IP@cognizant.com . I will cooperate with Cognizant, both before and after my employment ends, in signing documents, providing information, and doing other things reasonably requested by Cognizant to secure, protect, enforce, and transfer to Cognizant all IP Rights in Cognizant Inventions. I understand that Cognizant will provide me with reasonable compensation for my time if substantial assistance is required from me after my employment with Cognizant ends. If Cognizant is unable for any reason to secure my signature to apply for or to pursue any application for any United States or foreign patent or copyright or similar registrations covering any Cognizant Invention, I hereby appoint Cognizant and its duly authorized officers and agents as my agent and attorney-in-fact to act for and on my behalf to sign and file applications and other documents and to do all other lawfully permitted acts to further the prosecution and issuance of patent, copyright or similar registrations for Cognizant Inventions, which will have the same legal force and effect as if I had signed them

**E. Inventions Created Before My Employment with Cognizant.** I understand that Cognizant is not seeking to own any Invention that I Created before I began my employment with Cognizant, whether it was Created while I was working alone or with others ("**Personal Inventions**"), except for any Invention that I Created while I was working: (1) under a contract that gave ownership of the Invention to Cognizant; or (2) for an Acquired Company, if the Invention is owned by, or I was obligated to assign it to the Acquired Company, or if the Invention met any one or more of the four conditions listed in Section 3.B in relation to the Acquired Company. Inventions meeting either of these two exceptions are considered to be Cognizant Inventions. To help avoid any future confusion or dispute as to what Inventions should be considered to be my Personal Inventions, I have provided below a non-confidential description of all of my Personal Inventions that I own as of the date I sign this Agreement, whether they are owned solely by me or jointly with others, and that could relate in any way to the actual or anticipated business, research or development activities of Cognizant. If I write "none" or leave the lines below blank then I am certifying that I do not have any ownership rights in any Personal Inventions or that my Personal Inventions do not relate in any way to the actual or anticipated business, research or development activities of Cognizant.

| Title | Date | Identifying Number or Brief Non-Confidential Description |
|---|---|---|
|  |  | Provisional Patent |
| Pattern Recognition Monitoring Tool | 07/31/2021 |  |
|  |  |  |
|  |  |  |

☐ **No Inventions**          ☐ **Additional sheets attached**

represent and warrant to Cognizant that none of my obligations relating to my Personal Inventions will materially affect my ability to perform my work obligations to Cognizant.

**F. My Rights to Personal Inventions I Create After My Start Date.** If I Create an Invention while I am employed by Cognizant, then it is also considered to be my Personal Invention if I can demonstrate to Cognizant that all of the following conditions apply: (1) I Created the Invention on my own time; (2) I did not use Cognizant Resources or Cognizant Confidential Information to Create the Invention; (3) the Invention does not relate directly to Cognizant's actual or demonstrably anticipated business, research or development activities; (4) the Invention was not suggested by and did not result from any work I performed for Cognizant; and (5) I did not violate Cognizant's code of ethics or other Cognizant policy in Creating the Invention. I understand that Cognizant is not seeking to own any of my Personal Inventions meeting these conditions. Subject to any express limitations in this Agreement, I understand that I am not restricted by this Agreement from continuing to develop and exploit my Personal Inventions, provided that: (1) I do so without using Cognizant Resources

or Confidential Information; (2) the work does not conflict or interfere with the performance of my job responsibilities for Cognizant; and (3) the work does not involve any violation of Cognizant's code of ethics or other policy and does not pose a conflict of interest as outlined in Section 4.A.

**G. Restriction on Using My Personal Inventions in My Job.** I agree not to incorporate any of My Personal Inventions into any Cognizant Invention or otherwise use any of My Personal Inventions in the course of my job responsibilities for Cognizant, unless I have obtained express prior written approval to do so from the Cognizant IP Team at IP@cognizant.com. I further agree not to incorporate any other Inventions into any Cognizant Invention, or otherwise use any other Inventions in the course of my job responsibilities for Cognizant, unless the Invention is owned by Cognizant or properly licensed to Cognizant for such purpose. If I do incorporate any of My Personal Inventions or any other Inventions that are not owned by Cognizant (and not licensed to Cognizant for such purpose) into any Cognizant Invention or otherwise use any of them in the course of my job responsibilities for Cognizant in such a way that Cognizant or any of its customers might be liable for infringement or misappropriation (which I acknowledge would be a violation of this Agreement), then I hereby grant Cognizant a nonexclusive, royalty-free, paid-up, irrevocable, perpetual, transferable, worldwide license (with rights to grant and authorize sublicenses through multiple tiers of sub-licensees) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Inventions, without restriction, and to practice any method related thereto.

**H. Disputes Regarding Ownership of Inventions.** I understand that if there is any dispute about the ownership of an Invention, Cognizant will be deemed the rightful owner unless I can provide conclusive written evidence that the Invention qualifies as one of My Personal Inventions. Disclosures made in Section 3.E or other verifiable records such as a publication date or a filing date with a patent office that precedes the commencement of my employment with Cognizant or an Acquired Company, for example, may serve as evidence of ownership of My Personal Inventions.

## 4. MY OTHER RESPONSIBILITIES.

**A. Avoiding Conflicts of Interest.** To avoid any actual or potential conflicts of interest with my responsibilities to Cognizant and to the maximum extent permitted by law, while I am employed by Cognizant I will not engage in any other employment, occupation, consulting or business activity directly related to the business in which Cognizant is now involved or in which it becomes involved during the term of my employment, nor will I engage in any other activities that would be competitive with or otherwise pose a threat to Cognizant's business interests or that would be potentially disruptive to Cognizant's operations, including but not limited to selling or licensing any of My Personal Inventions to a Cognizant competitor. Prohibited activities include but are not limited to owning, operating, assisting, consulting for, contracting with, being employed by, or performing services (other than on behalf of Cognizant) for any current or prospective customer of Cognizant for which I performed any services or with which I otherwise interacted in connection with my job responsibilities for Cognizant. Without limiting the foregoing, I represent and warrant to Cognizant that I have no other agreements, relationships, or commitments to any other person or entity that conflict with the provisions of this Agreement, my obligations to Cognizant under this Agreement, or my ability to become employed and perform the responsibilities for which I am being or was hired by Cognizant.

**B. Restrictive Covenants.**

(1) **Definition. "Restriction Period"** means a period of 12 months immediately following the termination of my employment for any reason, whether termination is with or without cause.

(2) **Non-solicitation of Employees.** During my employment with Cognizant and during the Restriction Period, I will not either directly or indirectly, on behalf of myself or any other person or entity, solicit or encourage any Cognizant employee, contractor or consultant to terminate their relationship with Cognizant

(3) **Non-solicitation of Customers.** During my employment with Cognizant and during the Restriction Period, I will not either directly or indirectly, on behalf of myself or any other person or entity, solicit any customer of Cognizant with whom I had dealings in the course of my employment for the purpose of (a) marketing, selling, or providing products or services that are competitive with those offered by Cognizant, or (b) inducing such customer of Cognizant to reduce or cancel its business with Cognizant.

(4) **Non-Competition.** During my employment with Cognizant I will not directly or indirectly contract with, be employed by, or advise or perform services for (other than on behalf of Cognizant) any customer or prospective customer of Cognizant. This obligation will continue during the Restriction Period with respect to any customer or prospective customer for which I performed any services or with which I otherwise interacted in connection with my job responsibilities for Cognizant in the 12-month period immediately preceding the termination of my employment.

(5) **Exception for Certain States and Jurisdictions.** The obligations in Section 4.B(3) and (4) shall not apply during any period of time in which I work in California, North Dakota, Washington D.C., or in any state or other jurisdiction in which they are prohibited by applicable law.

(6) **Reasonableness.** I agree that the restrictions in this Section 4.B are reasonable as to time, area and scope; that they are necessary to protect Cognizant's investment in me; and that they are not broader than necessary to protect Cognizant's legitimate business interests and goodwill.

**C. Compliance with Laws and Cognizant Policies.** I will comply with and to do all things necessary for Cognizant to comply with: (1) the laws and regulations governing Cognizant's business; (2) the terms of all of Cognizant's contracts, including those involving government obligations that relate to intellectual property or the safeguarding of information; and (3) Cognizant's code of ethics and its other policies and procedures as they may be updated from time to time, including without limitation policies and procedures related to intellectual property, security, and privacy matters.

**D. Use of Cognizant Systems.** I acknowledge that I have no reasonable expectation of privacy in any computer, server, computer system, e-mail, mobile or handheld device, voicemail, or other equipment or technology (collectively, "**Cognizant Systems**") used to conduct Cognizant's business. I acknowledge that Cognizant has the right to view any content contained in Cognizant Systems and otherwise audit and monitor Cognizant Systems without notice to me. I also understand that I am not permitted to add any unlicensed, unauthorized or non-compliant software to Cognizant Systems, including without limitation open source or free software not authorized in advance by Cognizant.

**E. Consent to Use Personal Data.** Cognizant's use, transfer, collection and storage of prospective and current employees' personal information is governed by its Global Associate Privacy Notice ("APN"). By providing my personal information to Cognizant, I agree to the terms and conditions outlined in the APN.

**F. Obligations Upon Termination of Employment.** At the conclusion of my employment with Cognizant, or at any other time that Cognizant requests, I will immediately deliver to Cognizant, and will not keep in my possession, recreate or deliver to anyone else, any and all Cognizant property, including but not limited to all copies of Confidential Information, all devices and equipment belonging to Cognizant (including laptop and other computers, mobile and handheld electronic devices, and other devices and equipment), all tangible embodiments of Cognizant Inventions, Cognizant credit cards, records, data, notes, notebooks, reports, files, and correspondence. I will also consent to an exit interview to confirm my compliance with this paragraph. I understand that I may retain from my employment with Cognizant only the documents that relate to the terms of my employment or my personal compensation and benefits, such as a copy of this Agreement and other agreements I may have with Cognizant, my pay stubs and personal tax documents, copies of my performance reviews or awards I have received and benefit plan booklets and other documents describing Cognizant benefits applicable to me. I agree to keep Cognizant advised of my home and business addresses for a period of three years after my employments ends, to allow Cognizant to contact me about my continuing obligations under this Agreement.

**G. Cognizant's Freedom of Action.** I acknowledge that nothing in this Agreement restricts Cognizant's freedom to pursue any business opportunity, course of development or business plan regardless of any knowledge, information or data that I may disclose to Cognizant at any time.

## 5. GENERAL.

**A. Assignment.** I understand that this Agreement will be binding on me, my heirs, executors, assigns, administrators and other legal representatives, and that it also is binding on and is intended to benefit Cognizant and any successor to Cognizant and any legal entity to whom it may be assigned by Cognizant. Cognizant may assign this Agreement to a legal entity that acquires Cognizant or all or most of its assets, or that acquires a portion of Cognizant's business or assets that relate to my job.

**B. Violations.** I understand that if I violate this Agreement I could be subject to disciplinary action, which may include termination of my employment.

**C. Entire Agreement.** If I have signed another agreement with Cognizant that imposes additional or more stringent obligations on me, such obligations are in addition to any obligations under this Agreement and will take precedence over any inconsistent terms of this Agreement. Otherwise, this is the entire agreement between Cognizant and me regarding its subject matter and this Agreement supersedes and replaces any prior or contemporaneous agreement, written or oral.

**D. Section Headings.** Section headings in this Agreement are for ease of reference only and will not be used to interpret this Agreement.

**E. Amendment.** I understand that an amendment to or waiver of this Agreement is only enforceable against Cognizant if it is in writing and signed by a Cognizant officer at the level of Vice President or above and approved by a Cognizant attorney at the level of Vice President or above as evidenced by a clear and conspicuous mark (e.g., initials, stamp, or other similar marking). If Cognizant or I do not enforce a term in this Agreement, that does not mean that we have waived that term and are precluded from enforcing it at a later time.

**F. Enforcement.** I acknowledge that Cognizant may be significantly and permanently harmed if I violate this Agreement and that money damages may not be adequate to compensate Cognizant for the resulting harm. Cognizant is entitled to obtain temporary, preliminary or permanent injunctive relief in court against me to prevent any continuation of a violation. However, this section does not limit any other legal or equitable remedies that Cognizant may have against me for a violation of this Agreement. If any provision of this Agreement is found to be unenforceable or inconsistent with applicable law, it will be deemed modified to the limited extent necessary to make it consistent with applicable law and it will be enforced as so modified.

**G. Disclosure of Agreement.** I understand that Cognizant is not obligated to keep this Agreement confidential and I grant Cognizant my consent to disclose this Agreement, for example to Cognizant's customers and investors, and after my employment terminates to advise my new employer about Cognizant's rights and my obligations under this Agreement.

**H. Governing Law.** This Agreement will be governed by and interpreted in accordance with the laws of the State of Texas without regard to conflicts of laws rules that might result in the application of the laws of a jurisdiction other than Texas; provided, however, that if I work in California at any point in time, then solely during the period of time I work in California this Agreement will be governed by and interpreted in accordance with the laws of the State of California without regard to conflicts of laws rules that might result in the application of the laws of a jurisdiction other than California.

**I. Survival.** I understand that some of my obligations under this Agreement are intended to continue to apply to me after my employment with Cognizant ends, regardless of who terminates my employment or why it is terminated.

**J. Opportunity to Review. By my signature below, I acknowledge that: (1) I have read and understand each provision of this Agreement; (2) I have had an opportunity to review this Agreement with legal counsel of my choosing; (3) I am signing this Agreement freely and with knowledge of its contents; (4) I am not relying on any representations or promises that are not included in this Agreement; (5) any restrictions imposed on me under this Agreement are fair, reasonable and proper and required for the protection of Cognizant's business interests and will not preclude me from earning a living; and (6) although this Agreement was drafted by Cognizant, it accurately reflects my intent and understanding and, in the event of any dispute, this Agreement will not be construed in favor of one party or the other, but rather in accordance with its plain meaning.**

✓ This page has been signed by Ava Naeini on May 17 2022 14:47 (GMT) effective from May 31 2022

See Exhibit 2 – for the denial, defamation claim of misconduct, court hearing and judge ruling correct copies are provided by herein by reference.

COMPLAINT BY AVA NAEINI AGAINST COGNIZANT TECHNOLOGY SOLUTIONS U.S.
CORPORATION AND DOES 1-100, inclusive.

EMPLOYMENT DEVELOPMENT DEPT
UI CENTER SAN FRANCISCO
P.O. BOX 7013
SAN FRANCISCO   CA 94120-7013

N O T I C E   O F   D E T E R M I N A T I O N / R U L I N G

DATE MAILED        11/29/22
BENEFIT YEAR BEGAN 10/09/22

A  NAEINI              0210
1722 MALCOLM AVE APT 206
LOS ANGELES        CA 90024-5797

EDD TELEPHONE NUMBERS:
ENGLISH      1-800-300-5616
SPANISH      1-800-326-8937
CANTONESE    1-800-547-3506
MANDARIN     1-866-303-0706
VIETNAMESE   1-800-547-2058
TTY          1-800-815-9387

FOR OFFICE USE ONLY 536106491557
YOU ARE NOT ELIGIBLE TO RECEIVE BENEFITS UNDER CALIFORNIA UNEMPLOYMENT
INSURANCE CODE SECTION 1256 BEGINNING 07/24/22 AND CONTINUING UNTIL YOU
RETURN TO WORK AFTER THE DISQUALIFYING ACT AND EARN $1860.00 OR MORE IN
BONA FIDE EMPLOYMENT, AND YOU CONTACT THE ABOVE OFFICE TO REOPEN YOUR
CLAIM.

YOU WERE DISCHARGED FROM YOUR LAST JOB WITH COGNIZANT TECHNOLOGY SOLU
BECAUSE YOU BROKE A REASONABLE EMPLOYER RULE.  AFTER CONSIDERING THE
AVAILABLE INFORMATION,  THE DEPARTMENT FINDS THAT YOU DO NOT MEET THE LEGAL
REQUIREMENTS FOR PAYMENT OF BENEFITS.  SECTION 1256 PROVIDES - AN
INDIVIDUAL IS DISQUALIFIED IF THE DEPARTMENT FINDS HE VOLUNTARILY QUIT HIS
MOST RECENT WORK WITHOUT GOOD CAUSE OR WAS DISCHARGED FOR MISCONDUCT FROM
HIS MOST RECENT WORK.  SECTION 1260A PROVIDES - AN INDIVIDUAL DISQUALIFIED
UNDER SECTION 1256 IS DISQUALIFIED UNTIL HE/SHE, SUBSEQUENT TO THE
DISQUALIFYING ACT, PERFORMS SERVICES IN BONA FIDE EMPLOYMENT FOR WHICH
HE/SHE RECEIVES REMUNERATION EQUAL TO OR IN EXCESS OF FIVE TIMES HIS OR HER
WEEKLY BENEFIT AMOUNT.

APPEAL:

YOU HAVE THE RIGHT TO FILE AN APPEAL IF YOU DO NOT AGREE WITH ALL OR PART
OF THIS DECISION.

TO APPEAL, YOU MUST DO ALL OF THE FOLLOWING:

A. COMPLETE THE ENCLOSED APPEAL FORM (DE 1000M) OR WRITE A LETTER STATING
THAT YOU WANT TO APPEAL THIS DECISION.  IF YOU WRITE A LETTER TO APPEAL,
EXPLAIN THE REASON WHY YOU DO NOT AGREE WITH THE DEPARTMENT'S DECISION.
WRITE YOUR SOCIAL SECURITY NUMBER ON EACH DOCUMENT YOU SUBMIT TO THE
DEPARTMENT.  (TITLE 22, CALIFORNIA CODE OF REGULATIONS (CCR), SECTION
5008).

B. MAIL THE DE 1000M OR YOUR LETTER TO THE ADDRESS OF THE OFFICE LISTED ON



Case 2:24-cv-07114  Document 1-2  Filed 08/28/24  Page 30 of 34  Page ID #:36

**MC**

# RECORD OF CLAIM STATUS INTERVIEW MISCONDUCT (MC)

**Date of Interview** 11-16-22

1. **SSN:** 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     2. **Claimant's Last Name:** NAEINI

3. **BYB:** 10-09-22     4. **Affected Week(s):** 10/15/22

5. **Potentially Disqualifying Facts:** MC Reason MC485 VIOLATION OF ER RULE

6. **Check if Applicable**

   ☐ Unscheduled Issue/Verbal Due Process Provided    ☐ Information Only    ☐ Pre-Appeal    ☐ Re-Det

7. **Documents Made Part of Record**

   ☒ ER Pro Dated 10/18/22    ☒ 1173 Dated 10/09/22    ☒ Other IDD:10/10/2022, WP:8AM-10AM,TIMELY DE 1101CZ SIDES FROM EQUIFAX WORKFORCE SOLUTIONS (UCFE) P O BOX 66945 ST. LOUIS MO 63166 FOR COGNIZANT TECHNOLOGY SOLU* ACCT #: 4336247* ER CONTACT: LORA PERRY * ER PHONE: (800) 829-1510 EXT. 2792*

8. **ATTEMPTS TO REACH EMPLOYER/AGENT**

   Er name: COGNIZANT TECHNOLOGY SOLU    Agent Name TALX UCM SERVICES

   Phone No. ER 1-800-829-1510    Agent LORA PERRY    Date 11/16/22    Time Called: 08:32AM

   **Results of Final Call:**

   ☒ Reached ER/Agent ☐ Busy ☐ Disconnected/Wrong No. ☐ No Answer

   **Or Left Message:**

   ☐ Answering Machine or
   ☐ with Name ___ Title ___

   for ER/Agent to return call by Date ___ Time ___

   ☐ ER/Agent did not return call Date ___ Time ___ ☐ DE 4463 Suspense Date ___

9. **EMPLOYER/AGENT INFORMATION**

   Spoke with
   ☐ ER
   ☒ Agent Name LORY PERRY Title UI CONSULTANT

   Date 11/16/22 Time 08:33AM Clmt's. Job Title SR ASSOCIATE PROJECTS

   Duration na    Rate of Pay $ 55.04    Per HOUR

   **WHEN** was clmt terminated? Date 07/29/22 **LDW** 07/29/22

   **WHO** terminated the clmt? Name AMIT RANJAN Title HR

   **HOW** was clmt terminated? ☒ In Person ☐ By Phone ☐ Other ___

   **WHY** was clmt terminated? Document specific dates and facts of FINAL INCIDENT. Include dates of and reasons for warnings.
   THE CLMT WAS DISCHARGE FOR UNACCEPTABLE AND IMPROPER CONDUCT. ASSOCIATE VIOLATED COMPANY'S CONFLICT OF INTEREST POLICY.

   **WAS** clmt warned? ☒ Yes ☐ No If yes, document dates and reasons for warnings. YES, WRITTEN AND VERBAL WARNINGS.

   **WHAT** reason was given to the clmt for the discharge? ___



**INGLEWOOD OFFICE OF APPEALS**
9800 South La Cienega Blvd - Ste 901
**INGLEWOOD CA 90301**

(310) 337-4302

C·U·I·A·B

| | |
|---|---|
| AVA NAEINI<br>   Claimant-Appellant | Case No. **7487259** |
| | Issue(s): 1030/32, 1256 |
| COGNIZANT TECHNOLOGY SOLU<br>c/o EQUIFAX WORKFORCE SOLUTIONS<br>   Account No: 433-6247<br>   Employer | Date Appeal Filed: 12/28/2022 |
| | EDD: 0210   BYB: 10/09/2022 |

**Date and Place of Hearing(s):**
(1) 04/24/2023

**Parties Appearing:**
Claimant

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 30 calendar days from the date of mailing shown below. See the attached "Notice to Parties" for further information on how to file an appeal. If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-300-5616.

**Amy Lee**, Administrative Law Judge

AVA NAEINI
1722 MALCOLM AVE APT 206
LOS ANGELES, CA 90024-5797

Date Mailed:   APR 2 7 2023

Case No.: 7487259
CLT/PET: Ava Naeini
Parties Appearing: Claimant
Parties Appearing by Written Statement: None

Inglewood Office of Appeals
ALJ: Amy Lee

## ISSUE STATEMENT

The claimant appealed from a determination disqualifying the claimant for unemployment benefits under Unemployment Insurance Code section 1256 beginning July 24, 2022. A ruling held the employer's reserve account was not subject to charges under Unemployment Insurance Code sections 1030 and 1032. The issue in this case is whether the claimant was discharged for misconduct connected with the most recent work.

## FINDINGS OF FACT

The claimant most recently worked as a senior associate for Cognizant Tech Solutions for two months, last earning $55.04 per hour. She last worked on approximately July 8, 2022 and was discharged from employment on July 29, 2022 under the following circumstances.

Before the claimant began working for the employer she completed a form disclosing an invention and patent that she owned. Through the employer, the claimant was assigned to work for Credit Suisse. Upon starting to work for Credit Suisse, she was required to disclose to them any outside business activities. During that process, the claimant disclosed that she had a company, which generates no revenue and for which she is the only employee.

On July 8, 2022, the employer suspended the claimant from further work and was informed that security was investigating the company that she had disclosed to Credit Suisse. On July 29, 2022, the employer discharged the claimant, stating that she had violated company ethics. In particular, the employer alleged that the claimant violated the conflict of interest policy because she had failed to disclose her company to them.

The claimant did not realize that she was required to disclose her company to the employer under their conflict of interest policy. During her onboarding training, there was only one slide in the presentation regarding conflict of interest, with no associated audio. The claimant understood the slide to state that she had to disclose ownership in a substantial company, but since her company had no revenue and no employees other than herself, she did not realize she had to disclose it. Had she known she needed to disclose the company to the employer, she would have done so, just as she had done with Credit Suisse. The claimant

understood that she could be disciplined up to termination for violation of the conflict of interest policy.

The employer did not appear for the hearing nor submit a written statement.

REASONS FOR DECISION

Testimony given at the hearing under oath and subject to cross-examination is generally entitled to greater weight than hearsay statements, whether or not such statements are signed under penalty of perjury. (Precedent Decisions P-B-218, P-B-293, and P-B-378.)

The claimant testified credibly that she did not understand that she was required to disclose her company to the employer under their conflict of interest policy, which is supported by the fact that she did disclose her company to Credit Suisse. The claimant also credibly testified that she would have disclosed her company to the employer under the conflict of interest policy had she known she was required to. The employer reported to the department that the claimant was discharged for violating their conflict of interest policy. However, the employer did not appear for the hearing and relied on hearsay statements to the department. Since the claimant's testimony was under oath and subject to cross-examination, her testimony is entitled to greater weight than the employer's hearsay statements.

An individual is disqualified for benefits if he or she has been discharged for misconduct connected with his or her most recent work. (Unemployment Insurance Code, section 1256.)

The employer's reserve account may be relieved of benefit charges if the claimant was discharged for misconduct. (Unemployment Insurance Code, sections 1030 and 1032.)

"Misconduct connected with the work" is a substantial breach by the claimant of an important duty or obligation owed the employer, willful or wanton in character, and tending to injure the employer. (Precedent Decision P-B-3, citing *Maywood Glass Co. v. Stewart* (1959) 170 Cal.App.2d 719.)

Every employee owes his or her employer an obligation of good faith and fair dealing. (Precedent Decision P-B-10.)

The employer has the burden of proving misconduct. (*Prescod v. California Unemployment Insurance Appeals Board* (1976) 57 Cal.App.3d 29.)

In this case, the employer discharged the claimant alleging violation of the employer's conflict of interest policy. However, the claimant's misunderstanding regarding disclosure of her company to the employer was just that – a misunderstanding. There is otherwise no evidence that the claimant knowingly violated her obligation of good faith and fair dealing.

It is, therefore, found that the claimant did not willfully breach an important duty owed to the employer, and that the claimant was discharged for reasons other than misconduct connected with her most recent work. The claimant qualifies for benefits under code section 1256. The employer's reserve account is subject to charges under code section 1030 or 1032.

<u>DECISION</u>

The department determination and ruling are reversed. The claimant qualifies for benefits under code section 1256. Benefits are payable, provided the claimant is otherwise eligible. The employer's reserve account is subject to benefit charges under sections 1030 or 1032.

ING:al
1/2